268 P.3d 917 (2012)
Donia TOWNSEND and Bob Perez, individually, on behalf of their marital community, and as class representatives; Paul Ysteboe and Jo Ann Ysteboe, individually, on behalf of their marital community, and as class representatives; Vivian Lehtinen and Tony Lehtinen, individually, on behalf of their marital community, and on behalf of their minor children, Niklas and Lauren; Jon Sigafoos and Christa Sigafoos, individually, on behalf of their marital community, and on behalf of their minor children, Colton and Hannah, Petitioners,
v.
The QUADRANT CORPORATION, a Washington corporation; Weyerhaeuser Real Estate Company, a Washington corporation; and Weyerhaeuser Company, a Washington corporation, Respondents.
No. 84422-4.
Supreme Court of Washington, En Banc.
Argued May 19, 2011.
Decided January 5, 2012.
*918 Lory Ray Lybeck, Brian Clifford Armstrong, Lybeck Murphy, LLP, Mercer Island, WA, for Petitioners.
Michael Ramsey Scott, Laurie Lootens Chyz, Michael Jacob Ewart, Hillis Clark Martin & Peterson, PS, Seattle, WA, for Respondents.
Bryan Patrick Harnetiaux, Attorney at Law, David P. Gardner, Attorney at Law, George M. Ahrend, Ahrend Law Firm, PLLC, Moses Lake, WA, amicus counsel for Washington State Association.
ALEXANDER, J.[*]
¶ 1 We granted review of a decision of the Court of Appeals in which that court reversed the superior court's denial of a motion by a corporate home seller and its parent companies to compel certain home purchasers to engage in arbitration pursuant to an arbitration clause in the purchase and sale agreement. We affirm the Court of Appeals.

I
¶ 2 Donia Townsend and Bob Perez (Townsend), Paul and Jo Ann Ysteboe, Vivian and Tony Lehtinen, and Jon and Christa Sigafoos (collectively Homeowners) purchased homes from the Quadrant Corporation (Quadrant). Quadrant, which builds and sells homes, is owned by Weyerhaeuser Real Estate Company (WRECO), which, in turn, is owned by the Weyerhaeuser Company (Weyerhaeuser). At the time of purchase, each couple entered into a purchase and sale agreement (PSA) with Quadrant. The PSA contained a clause that required that
[a]ny controversy or claim arising out of or relating to this agreement, any claimed breach of this agreement, or any claimed defect relating to the property, including without limitation, any claim brought under the Washington State Consumer Protection Act (but excepting any request by *919 Seller to quiet title to the Property) shall be determined by arbitration.
Clerk's Papers (CP) at 640.[1]
¶ 3 Several years after the home purchases, Townsend and the Ysteboes jointly filed a lawsuit in King County Superior Court against Quadrant, WRECO, and Weyerhaeuser, alleging outrage, fraud, unfair business practices, negligence, negligent misrepresentation, rescission, and breach of warranty. In support of these allegations, they claimed that Quadrant knowingly engaged in shoddy workmanship in building the homes and that this resulted in serious construction defects that caused personal injuries relating to mold, pests, and poisonous gases. They also claimed that the PSA, as well as the arbitration clause contained therein, is unenforceable.
¶ 4 Shortly after Quadrant received notice of the lawsuit, it filed a motion to stay proceedings and compel arbitration. At about the same time, WRECO and Weyerhaeuser filed a motion for summary judgment contending that, aside from the parent-subsidiary relationship with Quadrant, "neither [WRECO] nor Weyerhaeuser ... has any connection to the plaintiffs or their houses." CP at 61. The superior court denied these motions.
¶ 5 The Lehtinens and Sigafoos, individually and on behalf of their minor children, then each separately filed a lawsuit against Quadrant, WRECO, and Weyerhaeuser, asserting causes of action identical to those asserted by Townsend and the Ysteboes. A King County Superior Court judge consolidated all of the actions filed by the Homeowners for "pretrial purposes." CP at 144.
¶ 6 Quadrant again moved to compel arbitration and WRECO and Weyerhaeuser sought similar relief. The superior court denied the motions, concluding that there were issues of fact about whether the PSA was a negotiated contract or a contract of adhesion.
¶ 7 On appeal, the Court of Appeals, Division One, reversed the superior court, concluding that "[t]he issue of the PSA's procedural unconscionability is a matter reserved for the arbitrator." Townsend v. Quadrant Corp., 153 Wash.App. 870, 885, 224 P.3d 818 (2009) (citing RCW 7.04A.060(3)). That court also determined that the claims of the children of the Homeowners' were subject to the arbitration clause and that WRECO and Weyerhaeuser did not waive their right to arbitration by moving for summary judgment. We thereafter granted the Homeowners' petition for review. Townsend v. Quadrant Corp., 169 Wash.2d 1021, 238 P.3d 504 (2010).

II
¶ 8 We engage "in de novo review of a trial court's decision granting a motion to compel or deny arbitration." Satomi Owners Ass'n v. Satomi, LLC, 167 Wash.2d 781, 797, 225 P.3d 213 (2009) (citing Adler v. Fred Lind Manor, 153 Wash.2d 331, 342, 103 P.3d 773 (2004)). "`The party opposing arbitration bears the burden of showing that the agreement is not enforceable.'" Id. (quoting Zuver v. Airtouch Commc'ns, Inc., 153 Wash.2d 293, 302, 103 P.3d 753 (2004)).

III
¶ 9 The primary issue before us is whether the procedural unconscionability question presented by these facts is one to be decided by an arbitrator or the court.[2] The Homeowners contend that "where there is a challenge to an integrated arbitration clause, the court, not an arbitrator, must evaluate evidence of contract formation when determining whether an arbitration provision is procedurally unconscionable." Pet'rs' Suppl. Br. at 12. Quadrant, WRECO, and Weyerhaeuser respond that the question is to be decided *920 by an arbitrator, rather than the court, because the Homeowners framed the procedural unconscionability issue in terms of the PSA generally, rather than "only and specifically" as to the arbitration clause. Answer to Pet. for Review at 11.
¶ 10 The Court of Appeals agreed with Quadrant and its parent companies, holding that under these facts the question of procedural unconscionability is for an arbitrator to decide because the Homeowners challenged the enforceability of the PSA as a whole. It said that under RCW 7.04A.060(2), "a court may entertain only a challenge to the validity of the arbitration clause itself, not a challenge to the validity of the contract containing the arbitration clause." Townsend, 153 Wash.App. at 879-80, 224 P.3d 818 (citing McKee v. AT & T Corp., 164 Wash.2d 372, 394, 191 P.3d 845 (2008)).
¶ 11 In reaching its decision, the Court of Appeals looked to provisions of the uniform arbitration act (UAA), chapter 7.04A RCW. Although it acknowledged that courts generally apply the rules of statutory construction only after deeming a statutory provision ambiguous, the Court of Appeals turned to the official comments to the UAA prior to examining the relevant statute for ambiguity. Townsend, 153 Wash.App. at 878 n. 7, 224 P.3d 818 (citing Cerrillo v. Esparza, 158 Wash.2d 194, 201, 142 P.3d 155 (2006)). It properly did so because "RCW 7.04A.901 requires that `[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.'" Id. (alteration in original) (citing Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wash.2d 712, 718, 845 P.2d 987 (1993) (citing the official Uniform Commercial Code (U.C.C.) comments in its analysis of U.C.C. § 1-106); Olmsted v. Mulder, 72 Wash.App. 169, 177, 863 P.2d 1355 (1993)).
¶ 12 The Court of Appeals then set forth the statutory provisions that it considered relevant to its inquiry: RCW 7.04A.060(3) states that an arbitrator "`shall decide ... whether a contract containing a valid agreement to arbitrate is enforceable'" and whether subsection (2) of that statute provides that the "`court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.'" Townsend, 153 Wash.App. at 879, 224 P.3d 818 (quoting RCW 7.04A.060). The Court of Appeals also cited a comment to the UAA, which explains that the above-cited subsections are intended to
"incorporate the holdings of the vast majority of state courts and the law that has developed under the FAA [Federal Arbitration Act, 9 USC §§ 1-14] that, in the absence of an agreement to the contrary, issues of substantive arbitrability, i.e., whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."
Id. at 879, 224 P.3d 818 (alteration in original) (quoting UAA § 6 cmt. 2, 7 U.L.A. 24 (2005)). The Court of Appeals further explained that comment 4 to section 6 of the UAA notes that the language in RCW 7.04A.060(3), "whether a contract containing a valid agreement to arbitrate is enforceable, is intended to follow the `separability' doctrine outlined in Prima Paint Corp. v. Flood & Conklin Manufacturing Co. [388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ]." Townsend, 153 Wash.App. at 880, 224 P.3d 818 (internal quotation marks omitted) (quoting UAA § 6 cmt. 4, 7 U.L.A. at 25). In Prima Paint, a corporation brought suit against another corporation to rescind a consulting agreement, claiming fraudulent inducement of the contract. The plaintiff, Prima Paint Corporation, did not, however, specifically allege fraud in the inducement of the arbitration clause within the contract. Applying the then-extant United States Arbitration Act of 1925 (9 U.S.C. §§ 1-14), the United States Supreme Court determined that "if the claim is fraud in the inducement of the arbitration clause itselfan issue which goes to the `making' of the agreement to arbitratethe federal court may proceed to adjudicate it," but that court cannot "consider claims of fraud in the inducement of *921 the contract generally." Prima Paint, 388 U.S. at 403-04, 87 S.Ct. 1801.
¶ 13 The United States Supreme Court reaffirmed its Prima Paint decision in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). In Buckeye, individuals alleged that a company, Buckeye Check Cashing, had charged usurious interest rates under an agreement signed by the parties that contained an arbitration clause. The Court held that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." Id. at 446, 126 S.Ct. 1204.
¶ 14 After Buckeye was decided, we were presented in McKee with the question of whether the court or an arbitrator was to decide a challenge that was "only and specifically" directed to an arbitration clause in a consumer services agreement, rather than to the agreement as a whole. McKee, 164 Wash.2d at 394, 191 P.3d 845. We concluded there that the enforceability of the arbitration provision was to be decided by the court, not an arbitrator. In reaching our decision in McKee, we distinguished Buckeye on the basis that the challenges raised therein related only and specifically to the arbitration clause, whereas in Buckeye the challenge was directed to the contract as a whole rather than simply to the arbitration clause. Thus, we concluded that the court must decide whether the agreement to arbitrate was enforceable, whereas that question was properly reserved for an arbitrator in Buckeye.
¶ 15 Here, as we have observed, the Court of Appeals concluded that an arbitrator should decide whether the arbitration clause is enforceable. In making its determination, that court reviewed the record and observed that the Homeowners failed to allege facts relating specifically and only to the arbitration agreement but, instead, alleged facts "relat[ing] to the PSA as a whole." Townsend, 153 Wash.App. at 885, 224 P.3d 818. It further stated that the "Homeowners' challenge to the validity of the arbitration clause rests on their argument that the PSAs themselves were invalid for procedural unconscionability as contracts of adhesion." Id. Here we must similarly review the facts to determine whether the Homeowners' challenge to the arbitration clause is sufficiently discrete to be decided by the court under McKee or whether it is so wrapped into their general allegations regarding the PSA that both issues must be decided by an arbitrator under Prima Paint and Buckeye.
¶ 16 In what the Homeowners titled their eighth cause of action in their complaint, they asserted that the PSA was an adhesion contract and that the arbitration clause within it was unenforceable. Significantly, they also asserted in that cause of action that their "claims for antecedent or subsequent fraud and for personal injury arise independently of the [PSA]; the arbitration clause contained therein is voidable and unenforceable on such claims." CP at 26. It is apparent, however, that they did not claim that the arbitration clause itself was procured by fraud. Significantly, the Homeowners testified in pretrial proceedings that Quadrant told them the terms of the PSAs were not negotiable and that they had to agree to all of the terms, including the arbitration clause, in order to purchase a Quadrant home. They also claimed that they were denied the opportunity to review and question the terms of the agreements before signing them, they were subjected to "high-pressure sales tactics," and had they been told the truth, they "would never have agreed to purchase a Quadrant home, let alone enter a purchase and sale agreement to buy a Quadrant home that contained an arbitration clause." CP at 674. In our view, each of the Homeowners' allegations pertain to the PSA as a whole because each time they separately mention the arbitration clause within the PSA, they do so by relating it to their general allegation that the PSA is procedurally unconscionable. In sum, the Homeowners have framed their claims pertaining to the arbitration clause and the PSA in a way that renders the two inseparable. In our view, one could decide whether the arbitration clause is unenforceable only by deciding whether the PSA as a whole is unenforceable.
*922 ¶ 17 Under these facts, the Court of Appeals properly determined that because the facts alleged by the Homeowners relate to the PSA as a whole, the "issue of the PSA's procedural unconscionability is a matter reserved for the arbitrator." Townsend, 153 Wash.App. at 885, 224 P.3d 818.

IV
¶ 18 We must also decide whether the Court of Appeals correctly held that the children of the Lehtinens and Sigafoos are bound by the arbitration clause to the same extent as their parents. The Court of Appeals determined that the children's claims "relate to the PSA" and there is "no distinction in the complaints" between the children's claims and the parents' claims. Id. at 888, 224 P.3d 818. We affirm the Court of Appeals on this issue as well, but we do so for reasons that differ from those given by the Court of Appeals.
¶ 19 As a general rule, nonsignatories are not bound by arbitration clauses. In Satomi, we held that "`"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."'" Satomi, 167 Wash.2d at 810, 225 P.3d 213 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))). However, courts have recognized limited exceptions to this rule, including the principle of equitable estoppel. See id. at 811 n. 22, 225 P.3d 213; Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1046 (9th Cir.2009). Equitable estoppel "`"precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."'" Mundi, 555 F.3d at 1045-46 (quoting Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir.2006) (quoting Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir.2004))). In this regard, equitable estoppel may require a nonsignatory to arbitrate a claim if that person, despite never having signed the agreement, "`"knowingly exploits"'" the contract in which the arbitration agreement is contained. Id. at 1046 (quoting Comer, 436 F.3d at 1101) (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, 269 F.3d 187, 199 (3d Cir.2001)).
¶ 20 Here, the Lehtinens and Sigafoos contend that their children "do not attempt to enforce the terms of the PSAs, nor do they base their claims on any alleged warranty contained in them." Pet'rs' Suppl. Br. at 7. We disagree. Throughout the pleadings filed by the Lehtinens and Sigafoos, the parents and children are referred to collectively as the "plaintiffs" and they present eight identical causes of action. Additionally, two of the causes of action alleged by the parents and their children relate directly to the PSAs, including an allegation of breach of warranty and a request for rescission. It is apparent, contrary to the contention made by the Lehtinens and Sigafoos, that the children are attempting to enforce the terms of the PSA and that they base their claim for breach of warranty on the warranties contained therein. Although the children received the benefit of the bargain in the transaction with Quadrant to the same extent as their parents, they now seek to avoid the burden of arbitration imposed by the PSA. The children, therefore, can be said to be knowingly exploiting the terms of the contract and, under Mundi, cannot avoid the arbitration clause within it. The children are, thus, bound by the arbitration agreement to the same extent as their parents.[3]

V
¶ 21 The final issue before us is whether WRECO and Weyerhaeuser waived their right to seek arbitration by moving for summary judgment based on a contention that they were not proper parties to the *923 lawsuit and that the Homeowners submitted evidence outside of the pleadings. In addressing the issue, the Court of Appeals properly observed that "a waiver of arbitration cannot be found if there is conduct suggesting a lack of intention to forgo the right to arbitrate." Townsend, 153 Wash.App. at 888-89, 224 P.3d 818 (citing Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc., 28 Wash.App. 59, 62, 621 P.2d 791 (1980)).
¶ 22 In the Homeowners' view, "a party who chooses to litigate by moving for summary judgment on the merits waives any right to later seek arbitration of the same claims." Pet. for Review at 18-19. They do not, however, cite any case that unequivocally states that a party that moves for summary judgment necessarily waives its right to compel arbitration. Instead, the Homeowners rely on the case of Naches Valley School District No. JT3 v. Cruzen, 54 Wash. App. 388, 395-96, 775 P.2d 960 (1989). There the Court of Appeals was faced with a dispute about the meaning of a sick-leave buy-out provision in a teachers' collective bargaining agreement. The trial court granted summary judgment to the teachers named in the lawsuit while denying a motion to arbitrate that had been filed by a teachers association. Although the teachers never requested arbitration, the teachers association appealed the decision to deny arbitration. The Court of Appeals concluded that the teachers association was not entitled to arbitration because the individual teachers had waived their right to compel arbitration by moving for and obtaining summary judgment. The facts before us are quite different because unlike the teachers in Naches Valley who prevailed on summary judgment and therefore waived their right to arbitrate, WRECO and Weyerhaeuser moved to compel arbitration after the trial court denied their motion for summary judgment.
¶ 23 In Otis Housing Ass'n v. Ha, 165 Wash.2d 582, 201 P.3d 309 (2009), we cited with approval the rule that the right to arbitrate is waived by conduct inconsistent with any other intent and stated that "`a party to a lawsuit who claims the right to arbitration must take some action to enforce that right within a reasonable time.'" Id. at 588, 201 P.3d 309 (quoting Lake Wash. Sch. Dist. No. 414, 28 Wash.App. at 64, 621 P.2d 791). We concluded that, "[s]imply put, we hold that a party waives a right to arbitrate if it elects to litigate instead of arbitrate." Id. Here, WRECO and Weyerhaeuser moved to compel arbitration promptly after the superior court denied their motion for summary judgment based on their assertions that they had no connection to the lawsuit. In our view, this conduct did not evince intent to waive arbitration. Accordingly, we affirm the Court of Appeals' holding that WRECO and Weyerhaeuser did not waive arbitration.

VI
¶ 24 We affirm the Court of Appeals' holdings that (1) the Homeowners' procedural unconscionability claim that pertained to the entire PSA, including the arbitration clause contained therein, is to be decided by an arbitrator; (2) the children of the Lehtinens and Sigafoos are bound by the arbitration clause; and (3) WRECO and Weyerhaeuser did not waive their right to arbitrate by moving for summary judgment prior to seeking to compel arbitration.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, SUSAN OWENS and JAMES M. JOHNSON, Justices.
STEPHENS, J. (concurring/dissenting).
¶ 25 I dissent from that part of the lead opinion ordering arbitration of the children's claims.[1] It is well-established that nonsignatories to a contract are not bound by an arbitration clause. Satomi Owners Ass'n v. Satomi, LLC, 167 Wash.2d 781, 810, 225 P.3d 213 (2009). Under principles of equitable estoppel, however, a party who knowingly exploits a contract for benefit cannot simultaneously avoid the burden of arbitrating. See *924 id. at 811 n. 22, 225 P.3d 213; see also Woodall v. Avalon Care Ctr.Fed. Way, LLC, 155 Wash.App. 919, 923-24, 231 P.3d 1252 (2010). The lead opinion holds equitable estoppel requires arbitration of the Lehtinen and Sigafoos children's injury claims because the complaint includes the children as "plaintiffs" and among the plaintiffs' claims are allegations of breach of warranty and a request for rescission. Lead opinion at 10-11. This is hardly a sufficient basis for applying equitable estoppel.
¶ 26 Importantly, the lead opinion rejects the Court of Appeals' holding that the children must arbitrate because "the source of the duty of care Quadrant owed the Homeowners and their children arises from the sale of the home." Townsend v. Quadrant Corp., 153 Wash.App. 870, 888, 224 P.3d 818 (2009). Without doubt, Quadrant owed the children an independent duty that does not arise from the purchase and sale agreement. The children assert personal injury claims, the precise scope of which the trial court will decide, but which are not grounded in the contract. This court has recently emphasized the independent duty of building professions to individuals who foreseeably sustain personal injuries as a result of negligent acts or omissions. See Affiliated FM Ins. v. LTK Consulting Servs., Inc., 170 Wash.2d 442, 243 P.3d 521 (2010) (lead and concurring opinions recognizing common law duty); Davis v. Baugh Indus. Contractors, Inc., 159 Wash.2d 413, 150 P.3d 545 (2007) (rejecting contract-based defense rooted in privity and recognizing deterrent effect of tort liability). Accordingly, it is a misnomer to label the duty at issue here a contractual duty.
¶ 27 Having rejected the Court of Appeals faulty reasoning, the lead opinion should have reversed the order compelling arbitration of the children's claims. Instead, the lead opinion focuses narrowly on the complaint's assertion of a rescission and a breach of warranty claim to reach the remarkable conclusion that the children "knowingly exploit[ed] the terms of the contract." Lead opinion at 11. This conclusion ignores the crux of the children's claims, which sound in tort and allege personal injuries. True, the parents are obliged to arbitrate their tort claims along with their contract claims, but this is because the arbitration agreement in the contract they signed says so. It does not follow that nonsignatories are bound to arbitrate tort claims that do not arise out of the contract. In the end, the lead opinion's reasoning sweeps aside the full facts and reduces the children's action to the sum total of only two claims. This is a wholly insufficient basis for concluding the children have exploited the benefits of the contract and are therefore estopped from having their tort claims heard in court.
¶ 28 There being no sufficient factual basis for applying equitable estoppel, I would rely on the general rule that nonsignatories to a contract are not bound by the contract's arbitration clause. I would reverse the Court of Appeals on this issue.
WE CONCUR: CHARLES W. JOHNSON, CHARLES K. WIGGINS, MARY E. FAIRHURST, and TOM CHAMBERS, Justices.
NOTES
[*] Justice Gerry L. Alexander is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] The arbitration clauses contained in the respective PSAs are not identical, but the parties appear to agree that any distinction in the language is insignificant.
[2] The Court of Appeals determined that "the arbitration clause is not substantively unconscionable" because it neither explicitly nor in effect prevents the Homeowners from resolving their claims in a single class action. Townsend, 153 Wash.App. at 883, 224 P.3d 818. The Homeowners have not challenged that decision here.
[3] Contrary to the dissent's suggestion, our decision does not reduce the children's action to the sum total of two claims. See dissent at 924. The children, like their parents, will have the opportunity to arbitrate their claims. As we have noted above, it is significant that the pleadings in this case, which were filed jointly by the parents and their children and which present identical causes of action among the parents and their children, plainly indicate that the children are attempting to enforce the terms of the PSAs to the same extent as their parents.
[1] On the separability issue, I agree with the lead opinion that this case presents a different situation from that in McKee v. AT & T Corp., 164 Wash.2d 372, 191 P.3d 845 (2008), because the contracting plaintiffs challenged the purchase and sale agreement as a whole, not simply the arbitration provision. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).