IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID TERRY INVESTMENTS, LLC-PRC, a Washington State limited liability company, and DAVID TERRY, a married individual, | ) ) ) ) ) | No. 36792-4-III |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| HEADWATERS DEVELOPMENT GROUP LIMITED LIABILITY COMPANY, a Washington State limited liability company; STONERIDGE CONTRACTORS LLC, a Washington State limited liability company; SG SPADY CONSULTING & CONSTRUCTION MANAGEMENT, LLC, a Washington State limited liability company; PARK ROAD COMMONS LLC, a Washington State limited liability company; STEVE SPADY, an individual, and LAURA L. KOGER, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) | |

LAWRENCE-BERREY, J. — Washington has a strong public policy that favors

arbitration. This policy supports broadly construing arbitration clauses in contracts when

such construction is reasonable and consistent with the parties' intent. We depart from the holding of *McClure v. Davis Wright Tremaine*, 77 Wn. App. 312, 890 P.2d 466 (1995), which followed the minority approach in construing somewhat similar arbitration clauses narrowly.

We also recognize the principle of "equitable estoppel" in the context of a signatory to a contract requiring arbitration, who attempts to avoid arbitration by bringing an action against a nonsignatory. We follow numerous other courts that conclude a signatory to a contract, requiring arbitration, may not take advantage of the benefits of the contract while avoiding its burden, i.e., arbitration.

In the context of this case, we reverse the trial court's order that mostly denied the defendants' motion to compel arbitration and conclude the dispute between the parties should be referred to arbitration in accordance with their various joint venture agreements that require arbitration of disputes "over this Agreement."

FACTS

This dispute involves three joint venture agreements to develop separate properties in Spokane—Park Road, Dakota Street, and Market Street.

David Terry is the managing member of plaintiff David Terry Investments, LLC-PRC (DTI), whose role in the joint venture was to provide financing for the development

of the three properties. Steve Spady is the managing member of various entities whose roles in the joint venture were to (1) own the three properties,[1] (2) provide construction management advice,[2] and (3) act as the licensed general contractor.[3] Park Road Commons, LLC (PRC) was a holding company created by Terry for tax purposes and was a subsidiary of both DTI and HDG. We will refer to these four entities as the Spady entities.

Throughout the latter part of 2013, DTI executed separate joint venture agreements for each of the three properties with SG Spady Consulting, and separate joint venture agreements for each of the three properties with HDG. Each of the six agreements contains the following provision:

> In a dispute *over this Agreement*, the dispute shall be submitted to arbitration before a local Spokane County Arbitrator who is mutually agreed amongst the parties. Arbitration shall be governed under the rules outlined under the Uniform Arbitration Act unless the parties agree otherwise.

Clerk's Papers (CP) at 29, 36, 43, 52-53, 62, 72-73) (emphasis added). The agreements require them to be construed as a whole, according to their fair meaning, without regard to who drafted them. They also contain addenda that set forth DTI's payment

---

[1] Headwaters Development Group, LLC (HDG).

[2] SG Spady Consulting & Construction Management, LLC (SG Spady Consulting).

[3] Stoneridge Contractors, LLC (Stoneridge).

responsibilities to HDG and SG Spady Consulting and those two companies' performance obligations to DTI. DTI did not sign a joint venture agreement with Stoneridge, PRC, or Spady individually.

On August 21, 2018, Spady wrote to Terry. In that letter, Spady declared DTI in breach of its obligations to fund the three projects and requested arbitration of the dispute. He asserted he had received offers to purchase the Park Road and the Dakota Street properties and requested DTI's assistance in removing its "cloud on the title." CP at 78. In exchange, he promised to deposit a specified portion of the sale proceeds in escrow, pending the result of arbitration. He also requested DTI to remove its "cloud of title" from the Market Street property to assist him in selling it. CP at 78. In response, Terry and DTI commenced this action in Spokane County Superior Court.

To determine whether the claims are subject to arbitration, it is necessary for us to set forth in detail the allegations in the first amended complaint, which was the subject of the motion to compel arbitration. The allegations are:

> 3.4 Spady's proposal [to Terry] involved three properties that he was in the process of developing through different entities that he controlled, namely [HDG], Stoneridge, SG Spady Consulting, and [PRC]. These three properties consisted of [Park Road, Market Street, and Dakota Street]. Spady represented that he was a qualified and competent contractor with the ability to work on and develop the properties quickly and within budget. He stated that, with funds invested by Terry, [HDG] could develop the properties and make money for both Terry and Spady. Spady also made

4

representations as to the present value of the properties (that turned out to be untrue). As a result of those representations, Terry, through DTI, made initial investments of approximately $800,000.00 with [HDG]. In return for the initial investments, as well as potential future investments, Spady promised that DTI would receive an ownership stake in all three properties. Spady also promised to diligently develop the properties so that DTI would get a return on its investment. Further, Spady and [HDG] were to keep track of and report progress to Terry and DTI.

3.5     Also as a result of the aforementioned representations, Terry—on behalf of DTI—signed three Joint Venture Agreements with [HDG] concerning the Park Road Property, the Market Street Property, and the Dakota Street Property. Terry/DTI relied on Spady/[HDG's] representations in deciding to enter in these agreements.

3.6     . . . Spady concealed the fact that he and his businesses were financially distressed, that he and his businesses lacked the requisite knowledge and expertise to develop properties, and that he and his businesses had no ability to property [sic] manage the logistical and financial aspects of property development. Spady also did not reveal that he and his businesses had problems with the Internal Revenue Service and had not been filing taxes.

3.7     . . . Spady, individually and on behalf of [HDG], never actually intended to abide by his promises to DTI and keep up his end of the bargain. Rather, he was just looking for a source of funds that he could use to pay off his existing creditors and enrich himself.

3.8     . . . [From 2014 to the middle of 2018], DTI invested [millions of dollars] based on representations from Spady/[HDG] regarding the necessity of such expenditures, their provision of status reports, copies of invoices, and other documentation. . . .

3.9     By mid-2018, DTI's total investment with [HDG] amounted to approximately $5.5 million. DTI typically invested this money by transferring it to a shared account with [HDG], with the agreement that the fund transfers would only be used for specific development purposes.

. . . .

3.11    [Around the end of 2017], *Terry and DTI . . . realized that [HDG] and Spady had been sending them falsified documents concerning the projects all along. . . . Spady/[HDG] had been improperly transferring*

5

> *and spending DTI funds . . . [and] had been transferring these funds to Spady personally, to Stoneridge, SG Spady Consulting and [PRC]. . . .*
>      3.12  *Spady's and [HDG's]misuse, misappropriation, and mishandling of DTI and Terry's funds also constituted breaches of the three Joint Venture Agreements.*  Pursuant to these agreements, DTI gained a 50% share in the Market Street Property, a 50% share in the Park Road Property, and a 25% share in the Dakota Street Property in exchange for certain sums of money.  *Further, [HDG] was obligated to spend DTI's funds for specific expenses and purposes, and also had to put forth efforts to develop the three properties.  [HDG] did not spend the funds as agreed. [HDG] frustrated the purposes of the* [*joint venture*] *agreements by not keeping proper books and accounting, which, inter alia, made it impossible for the joint ventures to secure financing for the construction projects.*

CP at 101-04 (emphasis added).

Based on these allegations, Terry and DTI asserted the following causes of action: (1) fraud (against Spady and HDG), (2) unjust enrichment (against all Spady entities), (3) conversion (against all Spady entities), and (4) breach of contract (against HDG).

The Spady entities[4] filed a motion to compel arbitration and to stay the trial court proceeding.  Terry and DTI opposed the motion and urged the trial court to narrowly construe the arbitration clause as excluding their noncontract claims.  They also filed a motion to compel discovery and a motion to allow the filing of a second amended

---

[4] By oversight, the Spady entities omitted Stoneridge both from their caption and from their motion.  We deem this oversight unintentional and construe the motion as including a request by Stoneridge to arbitrate.

complaint, and set those motions to be heard immediately following the Spady entities' motion to compel arbitration.

The trial court narrowly construed the arbitration clause and ordered only DTI's breach of contract claim against HDG to arbitration. It retained jurisdiction of the noncontract claims against the Spady entities and granted Terry's and DTI's requested motions.

Several days later, the Spady entities timely appealed.

ANALYSIS

A.      THE SPADY ENTITIES' MOTION TO COMPEL ARBITRATION

In 2005, Washington enacted chapter 7.04A RCW, Washington's "Uniform Arbitration Act." The act applies to this dispute. *See* RCW 7.04A.030(1).

Whether a controversy is subject to an agreement to arbitrate is a question for the court, not the arbitrator. RCW 7.04A.060(2). We review a trial court's decision to grant or deny a motion to compel arbitration de novo. *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 455, 268 P.3d 917 (2012).

Washington has a strong policy favoring arbitration. *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 892, 16 P.3d 617 (2001); *Davidson v. Hensen*, 135 Wn.2d 112, 117-18, 954 P.2d 1327 (1998); *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995).

7

But even so, arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute he or she has not agreed to arbitrate. *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810, 225 P.3d 213 (2009).

The material portion of the arbitration clause at issue provides: "In a dispute *over this Agreement*, the dispute shall be submitted to arbitration . . . ." *See* CP at 29, 36, 43, 52-53, 62, 72-73 (emphasis added).

The trial court ordered only DTI's breach of contract claim against HDG to arbitration. We organize our analysis of the issues briefed by the parties as follows: (1) whether the arbitration clause required DTI's noncontract claims against HDG and SG Spady Consulting to be submitted to arbitration, (2) whether the claims brought by Terry must be arbitrated, and (3) whether DTI's claims against Stoneridge, Spady, and PRC must be arbitrated.

### 1. *DTI's noncontract claims asserted against HDG & SG Spady Consulting*

The trial court declined to compel arbitration of DTI's noncontract claims against HDG and SG Spady Consulting, despite both companies having contracts with DTI that contained agreements to arbitrate. In declining, the trial court relied on *McClure v. Davis Wright Tremaine*, 77 Wn. App. 312.

There, the contract provision required arbitration of "'[a]ny dispute, controversy or claim [1] arising out of or [2] in connection with, or [3] relating, to this Agreement . . . .'" *Id.* at 314. The *McClure* court, citing one federal district court authority, noted "'relating to'" is broader than "'arising out'" of a contract. *Id.* at 314. Choosing the broadest of the three phrases, the *McClure* court held that the phrase "'relating to'" encompassed a claim for breach of fiduciary duty. *Id.* at 315.

Here, the trial court construed "over this Agreement" and concluded the phrase more closely resembled "arising out of" than "relating to." For this reason, it construed "over this Agreement" narrowly and concluded the parties had not intended to include noncontract claims in the scope of the arbitration provision.

We can discern little distinction between the three phrases, "arising out of," "relating to," and "over this." We disagree with *McClure* and instead agree with the vast majority of jurisdictions that these and similar phrases should be construed broadly.

In *Digital Landscape, Inc. v. Media Kings, LLC*, 2018 COA 142, 440 P.3d 1200, *cert. denied*, 2019 WL 2178082, an appellate court in Colorado, thoroughly analyzed a split within the federal circuits of whether "arising out of" and "relating to" should be similarly construed. Its conclusions were: The First, Third, Fifth, Sixth, Seventh, Eighth and Eleventh federal circuits had concluded the two phrases should be similarly and

broadly construed. *Id.* at 1207-09. The Ninth and federal circuits had concluded "arising out of" should be more narrowly construed than "relating to." *Id.* at 1206-07. And the Second Circuit, although not overruling its adherence to the minority view, had recognized the minority view is "'inconsisten[t] with federal policy favoring arbitration.'" *Id.* at 1207 (alteration in original) (quoting *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984)).

We adopt the majority view for three reasons. First, as noted previously, Washington has a strong policy favoring arbitration. The majority view better effectuates this policy.

Second, RCW 7.04A.901 requires courts, when construing the Uniform Arbitration Act, to consider "the need to promote uniformity of the law with respect to its subject matter among states that enact it." We best promote uniformity by adopting the clear majority view. *See also Townsend*, 173 Wn.2d at 456-57 (recognizing this policy of uniformity and adopting the approach set forth in the commentary to the Uniform Arbitration Act).

Third, our primary goal when construing contract language is to discern the parties' intent. *Hearst Comm'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Parties select arbitration to achieve an inexpensive and efficient resolution of

their disputes. *Godfrey*, 142 Wn.2d at 892. This goal is thwarted by a process that permits a financially advantaged party to split claims involving the same core facts into two forums. Unless the parties clearly state a desire to pursue related claims in two forums, courts should not do it for them. *See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (if parties want to split potential claims, they should specifically state in their contract which claims should be subject to arbitration and which should not).

We conclude that a dispute "over this Agreement" is as broad as a dispute "relating to the Agreement" or "arising under the Agreement." DTI's noncontract allegations against HDG and SG Spady Consulting all relate to the three joint venture agreements. The central component of the amended complaint's allegations involve the three joint venture agreements—the formation thereof, the performance thereof, and the breach thereof. The disposition of each cause of action will involve similar evidence. We conclude DTI's noncontract claims against HDG and SG Spady Consulting must be litigated in one forum—arbitration.[5]

---

[5] The trial court properly adhered to the only controlling authority on this issue, *McClure*, 77 Wn. App. at 314-15. We are not so bound. *See In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 148-50, 410 P.3d 1133 (2018) (the Court of Appeals is not bound by "horizontal stare decisis"; conflicts within the Court of Appeals are resolved by the Supreme Court).

### 2.	*Claims brought by Terry*

Terry did not sign any of the six agreements in his individual capacity but seeks to recover monies he invested in the project through DTI. As we noted previously, a party cannot be required to arbitrate a dispute he or she has not agreed to arbitrate. *Satomi Owners Ass'n*, 167 Wn.2d at 810. "However, courts have recognized limited exceptions to this rule, including the principle of equitable estoppel." *Townsend*, 173 Wn.2d at 461. "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Id.* (internal quotation marks omitted) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009)).

The *Townsend* court discussed application of equitable estoppel to nonsignatories to a contract requiring arbitration. In *Townsend*, parents and children sued a homebuilder for serious construction defects that caused personal injuries relating to mold, pests, and poisonous gases. *Id.* at 454. The parents had contracted with the homebuilder to build the house, and the contract contained a clause that required arbitration of claims arising out of or related to the construction contract. *Id.* The four-justice lead opinion, and a fifth justice in a concurrence, held that whether the arbitration agreement was procedurally unconscionable, as the parents claimed, must be determined by an arbitrator.

12

*Id.* at 460, 464 n.4.  The five-justice concurring/dissenting opinion addressed the other issue, whether the nonsignatory children were also required to arbitrate.  The majority on this issue declined to apply equitable estoppel against the children.  The majority concluded the children's pursuit of personal injury claims outside of arbitration was not inequitable because their rights arose wholly independent of the building contract.  *Id.* at 465-66.

But here, application of equitable estoppel against Terry is proper.  Terry chose to invest money in HDG through his company, DTI.  His claims are as intimately tied to the joint venture agreements as are the claims asserted by DTI.  He alleges the Spady entities induced him to invest in the projects and then failed to perform as promised and misused his investment proceeds in ways not contemplated by the joint venture agreements.  He is essentially seeking the benefit of the contractual promises the Spady entities made to DTI. We hold it would be inequitable for Terry to accept the benefit of the contract, i.e., the promises made in the joint venture agreements, while avoiding its burden, i.e., an agreement to arbitrate.  To the extent DTI must pursue its claims in arbitration, so must Terry.

13

> 3.    *Noncontract claims against Stoneridge, Spady, and PRC*

Stoneridge, Spady and PRC did not sign the joint venture agreements. Washington courts have not addressed the application of equitable estoppel in the context presented here, where a signatory to a contract requiring arbitration seeks to avoid arbitration by bringing claims against nonsignatories. In *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1 Cal. Rptr. 3d 328 (2003), the appellate court in California discussed this very issue.

"[T]he equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are 'based on the same facts and are inherently inseparable' from arbitrable claims against signatory defendants." *Id.* at 1713 (internal quotation marks omitted) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)). "Courts applying equitable estoppel against a signatory have 'looked to the relationships of persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations.'" *Id.* (internal quotation marks omitted) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)). Federal circuits have applied the doctrine of equitable estoppel to compel arbitration of a

signatory's claims against a nonsignatory in multiple cases. *Choctaw Generation Ltd. P'ship*, 271 F.3d at 406; *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000); *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981); *In re Boon Global Ltd.*, 923 F.3d 643, 654 n.5 (9th Cir. 2019); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir. 1984).

Here, DTI's claims against Stoneridge and PRC are based only on allegations that those companies *received* funds misappropriated by HDG. Whether HDG misappropriated funds largely depends on the contractual rights and responsibilities between DTI and HDG. We conclude DTI's claims against Stoneridge and PRC are sufficiently intertwined with the joint venture agreements so as to require arbitration.

Similarly, DTI's claims that Spady made false representations before and during the joint venture agreements are sufficiently intertwined with the joint venture agreements. Spady and HDG are substantially the same "person," and DTI's allegations against them involve the same asserted wrongs and issues—all intimately intertwined with the joint venture agreements. We conclude DTI's claims against Spady are such that equitable estoppel also requires those claims to be pursued in arbitration.

15

No. 36792-4-III
*David Terry Inv. v. Headwaters Dev. Grp.*

MOTIONS TO AMEND AND COMPEL DISCOVERY

The Spady entities contend the trial court erred when it granted plaintiffs' motions to amend their complaint and to compel discovery. Those motions were granted the same day the court ruled on the Spady entities' motion to compel arbitration. The Spady entities argue the denial of the motion to compel arbitration was appealable as of right, RAP 2.2(a)(3), and if we reverse that ruling, then these two other orders are void ab initio. We disagree.

A trial court generally retains full authority to consider and rule on whatever motions are presented to it until a party files a notice of appeal. RAP 7.1. The trial court was not required to wait 30 days to see if the Spady entities timely appealed the unfavorable ruling. The trial court had authority to consider and rule on the two additional motions until the Spady entities filed their notice of appeal several days later.

No. 36792-4-III
*David Terry Inv. v. Headwaters Dev. Grp.*

Reversed in part; remanded for the trial court to enter an order compelling

arbitration of all claims and to stay the proceedings.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.

Andrus, J.[6]

---

[6] The Honorable Beth Andrus is a Court of Appeals, Division One, judge sitting in Division Three under CAR 21(a).

17