# United States Court of Appeals for the Federal Circuit

———————————

**STEPHEN F. EVANS, ROOF N BOX, INC.,**
*Plaintiffs-Appellees*

**v.**

**BUILDING MATERIALS CORPORATION OF AMERICA, DBA GAF-ELK CORPORATION,**
*Defendant-Appellant*

———————————

2016-2427

———————————

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:16-cv-00282-GBL-IDD, Judge Gerald Bruce Lee.

———————————

Decided: June 5, 2017

———————————

GREGORY N. STILLMAN, Hunton & Williams LLP, Norfolk, VA, argued for plaintiffs-appellees. Also represented by WENDY COHEN MCGRAW.

JOHN DENNIS MURNANE, Fitzpatrick, Cella, Harper & Scinto, New York, NY, argued for defendant-appellant. Also represented by ROBERT SCOTT PICKENS; JUSTIN J. OLIVER, Washington, DC.

———————————

Before REYNA, LINN, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

In September 2009, Roof N Box, Inc. (RNB) and Building Materials Corp. of America d/b/a GAF-ELK Corp. (GAF) entered into an agreement under which GAF would promote RNB's "Roof N Box" product, a three-dimensional roofing model, to building-construction contractors affiliated with GAF. The agreement contains a provision that requires the parties to submit disputes "arising under" the agreement to arbitration. GAF terminated the agreement after about a year, and the validity of that termination is not at issue.

In March 2016, RNB, together with its founder and president, Stephen Evans, brought the present suit against GAF based on GAF's activities in marketing its own product that competes with the Roof N Box product. The complaint alleges design-patent infringement under federal law as well as trade-dress infringement and unfair competition under federal and state law. GAF moved to dismiss or stay the action pending arbitration based on the 2009 agreement's arbitration provision. The district court denied that motion. GAF appeals. Because GAF's assertion that the arbitration provision covers the claims stated in the complaint is "wholly groundless," a standard that GAF accepts as applicable in this case, we affirm.

I

Mr. Evans is the inventor of the "Roof N Box" product, a three-dimensional roofing model designed to be used by a seller of roofing products and services to display roofing components when making a sales pitch to a homeowner. According to Mr. Evans and RNB, the Roof N Box product allows a salesperson to remove or replace the layers of roofing on the model while explaining the roofing layers, their functions, and their terminologies. In June 2007,

Mr. Evans filed a design patent application for the model, which issued as U.S. Design Patent No. D575,509.

In September 2009, RNB entered into a promotional agreement with GAF. GAF agreed to promote the Roof N Box product to GAF's network of certified contractors who installed roofing on residential and commercial structures. RNB agreed to sell the Roof N Box product at discounted prices to the GAF contractors and to pay GAF five percent of the total amount that RNB received from those sales. RNB also agreed to maintain the confidentiality of GAF's proprietary information. Unless terminated, the agreement was to remain in effect until September 1, 2016, and would thereafter automatically renew for additional two-year renewal periods.

The 2009 agreement contains an arbitration provision, which states: "If any dispute or disagreement arises under this Agreement," and the "dispute or disagreement cannot be settled[,] . . . then such dispute or disagreement shall be submitted to final and binding arbitration in accordance with the rules of American Arbitration Association . . . unless otherwise agreed to, in writing, by both Parties." J.A. 84. The agreement also contains what GAF characterizes as a survival clause, which states: "[T]ermination for default . . . [shall not] constitute a waiver of any rights or remedies of the non-defaulting Party including, without limitation, the right of the non-breaching Party to seek damages for breaches occurring during the Initial Term or any Renewing Term." J.A. 80. GAF terminated the agreement in 2010.

In March 2016, Mr. Evans and RNB sued GAF in the Eastern District of Virginia. *See* Complaint, *Evans v. Bldg. Materials Corp. of Am.*, No. 1:16-cv-282-GBL-IDD (E.D. Va. Mar. 14, 2016), ECF No. 1. The complaint states the following claims: Counts I and II for, respectively, direct and induced patent infringement under 35 U.S.C. § 271(a) and (b); Count III for unfair competition

and trade-dress infringement under 15 U.S.C. § 1125(a); Count IV for unfair competition and trade-dress infringement under state common law; and Count V for unfair competition under N.J. Stat. § 56:8-2. The complaint alleges that, after the termination of the 2009 agreement, GAF manufactured and sold an infringing roofing model that competed with the Roof N Box product. GAF does not dispute that it developed and sold a promotional roofing product.

In May 2016, GAF moved to dismiss or stay the action pending arbitration, invoking the 2009 agreement's arbitration provision. *See* Defendant's Motion to Dismiss or, in the Alternative, To Compel Arbitration and Stay Proceedings, *Evans*, No. 1:16-cv-282-GBL-IDD (E.D. Va. May 13, 2016), ECF No. 13. The district court denied the motion. *See* Memorandum Opinion & Order, *Evans*, No. 1:16-cv-282-GBL-IDD (E.D. Va. July 6, 2016), ECF No. 32. The court held that the arbitration provision did not cover the claims in the complaint because GAF terminated the agreement before the parties' dispute arose. *Id.* at 5–8. In the alternative, the court held that the claims were outside the scope of the arbitration provision. *Id.* at 8–10.

GAF appeals. We have jurisdiction under 28 U.S.C. § 1292(c)(1). *See Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1354–55 (Fed. Cir. 2004).

## II

GAF argues that the district court erred by (1) deciding whether the claims of the complaint were arbitrable rather than reserving that issue for the arbitrator and (2) determining that the claims were not arbitrable. We review the denial of a motion to dismiss or stay an action pending arbitration under the law of the relevant regional circuit. *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006). The Fourth Circuit prescribes de

novo review. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 91 (4th Cir. 1996).

The parties dispute the standard that the district court should have applied in determining whether to decide the issue of arbitrability itself or instead refer that issue to arbitration. Although the parties agree that Fourth Circuit law governs, they disagree as to the standard the Fourth Circuit would have applied. GAF argues that the Fourth Circuit would have applied, in this case, a standard under which the court may reject arbitration if and only if the assertion of arbitrability is wholly groundless. Appellant's Br. 18–19; Oral Argument 15:28–32 ("The standard here is: Is what we are saying wholly groundless? And we believe it is not, your honor."). In contrast, Mr. Evans and RNB argue that a court may reject arbitration based on its analysis of the claims and the arbitration provision, even if it does not find the assertion of arbitrability to be so weak as to be wholly groundless. Appellees' Br. 11–12.

We need not resolve that dispute. We accept for purposes of this appeal the "wholly groundless" standard, which GAF has accepted both expressly at oral argument and at least implicitly in its briefs.[1] Applying that stand-

---

[1] This court stated in *Qualcomm* that the "wholly groundless" standard applies when an arbitration agreement clearly and unmistakably refers the issue of arbitrability to the arbitrator. 466 F.3d at 1371, 1373 & n.5. In its briefs, GAF made no argument that the *Qualcomm* standard authorizes more inquiry into the issue of arbitrability than is legally proper. At oral argument, GAF expressly accepted the *Qualcomm* standard. Oral Argument 15:28–32. Accordingly, we consider any argument that the *Qualcomm* standard permits too much judicial inquiry to be waived.

ard, we conclude that the district court correctly rejected arbitration here because GAF's assertion of arbitrability is wholly groundless. That conclusion requires affirmance of the district court's decision not to refer the issue of arbitrability to the arbitrator and, simultaneously, the district court's denial of the motion to dismiss or stay the case pending arbitration. And it does so without regard to the district court's conclusion that the termination of the 2009 agreement rendered the arbitration provision inapplicable to the present dispute.[2]

Whether GAF's assertion of arbitrability is wholly groundless depends on the scope of the language of the arbitration provision. Here, the relevant arbitration provision reaches only claims "arising under" the 2009 agreement. GAF accepts that, for such language, Fourth Circuit precedent directs the focus to "whether the claims at issue have a direct nexus to the contractual obligations, and more specifically, whether the claims are 'related to the interpretation and performance of the contract itself.'" Appellant's Br. 25 (quoting *Am. Recovery*, 96 F.3d at 92–93). Such "arising under" language is narrower in scope

---

For that reason, this case is not an appropriate one in which to explore differences among circuit-court opinions regarding when the issue of arbitrability is to be referred to arbitration. In particular, we do not explore the extent to which such differences reflect case-specific differences in contract language or differences in legal standards. *See, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284–93 (10th Cir. 2017) (discussing various Supreme Court and circuit-court opinions); *Douglas v. Regions Bank*, 757 F.3d 460, 461–64 (5th Cir. 2014) (discussing similar issues).

[2] We also need not address the significance of the fact that Mr. Evans is not named as a party to the 2009 agreement.

than language, such as "relating to," under which a claim may be arbitrable if it has a "significant relationship" to the contract, regardless of whether it arises under the contract itself. *Long v. Silver*, 248 F.3d 309, 316–17 (4th Cir. 2001); *Am. Recovery*, 96 F.3d at 92–93; *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988).

Fourth Circuit law stresses that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Am. Recovery*, 96 F.3d at 92 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25 (1983)). Thus, a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). We follow those principles in reviewing the complaint in this case.

Counts I, II, and III state claims for patent infringement, trade-dress infringement, and unfair competition related, not to GAF's carrying out of its obligations established by the 2009 agreement, which concerned GAF's promotion of RNB's products, but rather to GAF's making and selling of its own competing roofing products. Those claims do not involve any issue "related to the performance or interpretation of the contract itself." *See* Appellant's Br. 25. Nor are the claims similar to those alleging tortious interference or other agreement-dependent wrongs, which courts have held to be covered by similarly worded arbitration provisions. *See, e.g.*, *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 380–82 (1st Cir. 2011). As a substantive matter, Counts I, II, and III challenge actions whose wrongfulness is independent of the 2009 agreement's existence. Those counts are so plainly outside the arbitration provision that a contrary argument is wholly groundless.

We also reject the assertion of arbitrability of Count IV, which, GAF now argues, incorporates an allegation that GAF breached a confidentiality obligation that it owed to RNB and possibly to Mr. Evans. As an initial matter, GAF has not preserved that argument. Its opening brief to this court did not present any argument for arbitrability specific to Count IV or GAF's confidentiality obligations. GAF mentioned "confidentiality" just once, and only in relation to the district court's finding that the arbitration provision did not survive the termination of the agreement. Appellant's Br. 29–30 ("The reservation of 'remedies at law' . . . pertains to confidentiality and non-use of GAF's sensitive information."). GAF did not make a version of its current point about Count IV until its reply brief and oral argument. *See* Oral Argument 4:45–6:23; Appellant's Reply Br. 2–3. That is too late. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

Moreover, GAF did not preserve its confidentiality-based argument in the district court. None of GAF's relevant district-court filings mention Count IV specifically or "confidentiality." *See* Defendant's Rebuttal in Support of its Motion to Dismiss or, in the Alternative, To Compel Arbitration and Stay Proceedings 4–6, *Evans*, No. 1:16-cv-282-GBL-IDD (E.D. Va. June 17, 2016), ECF No. 30 (Defendant's Rebuttal); Defendant's Memorandum of Law in Support of its Motion to Dismiss or, in the Alternative, To Compel Arbitration and Stay Proceedings 9–10, *Evans*, No. 1:16-cv-282-GBL-IDD (E.D. Va. May 13, 2016), ECF No. 14 (Defendant's Memorandum).

That GAF did not timely make its new argument is hardly surprising. The argument rests on the complaint's statement that GAF agreed to maintain the confidentiality of Mr. Evans's and RNB's information. Complaint

¶ 21. But that statement does not allege that GAF undertook any such confidentiality obligation under the 2009 agreement itself, which is the sole asserted source of a duty to arbitrate. And in fact, the 2009 agreement does not contain such an obligation. The agreement contains a one-way confidentiality provision, which requires RNB to maintain the confidentiality of GAF's proprietary information, but not the reverse. *See* J.A. 83 ("Roof N Box shall keep confidential and shall not use, except in the performance of the Program, any proprietary technical or business information of GAF or its affiliates which Roof N Box may obtain during the term of this Agreement . . . ."). Indeed, GAF agreed at oral argument that the 2009 agreement's language did not obligate GAF to maintain the confidentiality of Mr. Evans's and RNB's information. *See* Oral Argument 2:23–26, 4:22–35. Thus, we cannot find that Count IV, or indeed any other count, arises under the 2009 agreement based on a GAF breach of any confidentiality obligation that it might have owed.

For similar reasons, GAF has forfeited any argument that Count V warrants different treatment from the other claims. GAF has not presented any argument that Mr. Evans's and RNB's assertion of a violation of N.J. Stat. § 56:8-2 is broad enough to cover a claim against GAF for breach of the 2009 agreement (or other agreement-related conduct). *See* Appellant's Br. 25–28; Defendant's Rebuttal 4–6; Defendant's Memorandum 9–10. And we see nothing in the record that would require us to disturb the district court's decision on that basis.

None of GAF's arguments establish the existence of a legitimate dispute regarding the application of the "arising under" arbitration provision to Mr. Evans's and RNB's claims. GAF points to the complaint's assertions of willfulness and similar states of mind, *see* Appellant's Br. 25–27, but those states of mind concern GAF's challenged conduct regarding its own products. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016)

("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."). They do not concern GAF's states of mind with respect to any obligation established by the 2009 agreement, *e.g.*, GAF's promotion of RNB's products.

GAF also relies on the complaint's requests for lost profits for unfair competition and trade-dress infringement. Appellant's Br. 27. But those requests do not make the asserted claims arise under the 2009 agreement. As with GAF's state-of-mind argument, what matters for the "arising under" determination is the conduct that the plaintiffs challenge and the asserted reasons that the challenged conduct is wrongful. Here, the claims alleged in Counts I–V would not arise under the 2009 agreement even if Mr. Evans and RNB were to calculate the harm caused by GAF's challenged conduct based on their past revenues—including revenues earned during the 2009–2010 period, when the agreement was in effect—because the grounds on which they challenge that conduct are independent of any obligation in the 2009 agreement.

Finally, GAF gains no ground in arguing that the complaint's claims will "continue to implicate" the 2009 agreement because adjudicating GAF's defenses "will require addressing the distinctions between the quality and construction" of RNB's and GAF's products and "questions of perceived product origin." Appellant's Br. 28. Resolving those factual issues, should they arise, will not require the adjudicator to interpret the meaning of any contractual provision or identify conduct forbidden by the 2009 agreement.

## III

For the foregoing reasons, we affirm the judgment of the district court.

## AFFIRMED