The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 20, 2018

## 2018COA142

**No. 17CA1111 Digital Landscape v. Media Kings — Courts and Court Procedures — ADR — Arbitration — Uniform Arbitration Act — Vacating Award**

A division of the court of appeals holds that the meaning of the phrase "arising under" in an arbitration clause is broad.  The opinion analyzes a debate among the federal circuits concerning the breadth of the phrase "arising under," and concludes that a broad definition is most consistent with Colorado law.  The division next concludes that, based on the facts of this case, the arbitrator had jurisdiction to treat a breach-of-the-implied-covenant-of-good-faith-and-fair-dealing counterclaim as a breach-of-the-duty-of-loyalty counterclaim.  And, since there was no prevailing party, the arbitrator was not required to award fees.  The division therefore affirms the trial court's judgment confirming the arbitrator's award.

COLORADO COURT OF APPEALS 2018COA142

Court of Appeals No. 17CA1111
City and County of Denver District Court No. 14CV33937
Honorable A. Bruce Jones, Judge

Digital Landscape Inc.,

Plaintiff-Appellant,

v.

Media Kings LLC,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BERNARD
Taubman and Welling, JJ., concur

Announced September 20, 2018

Sean Connelly, Connelly Law LLC, Denver, Colorado, for Plaintiff-Appellant

Sarah De Diego, De Diego Law, Santa Monica, California, for Defendant-Appellee

¶ 1     Judge Learned Hand once wrote that "words are chameleons, which reflect the color of their environment." *Comm'r v. Nat'l Carbide Corp.*, 167 F.2d 304, 306 (2d Cir. 1948), *aff'd,* 336 U.S. 422 (1949).  In this appeal, the words are the phrase "arising under." Their environment is an arbitration clause, which reads: "Any disputes *arising under* this [a]greement will be resolved by binding arbitration . . . ." (Emphasis added.)  We are tasked with figuring out whether this phrase takes on a narrow or a broad hue from its context in the arbitration clause.

¶ 2     The appellant in this case — plaintiff, Digital Landscape Inc., which we shall call Digital — asserts that "arising under" has a narrow scope.  For Digital, this means that the arbitrator lacked jurisdiction to decide a claim that Digital submits did not "arise under" the contract in this case.  The appellee — defendant, Media Kings LLC, which we shall call Media — submits that the scope of "arising under" is broad, so the arbitrator had jurisdiction to consider the claim.  In this appeal, Digital asks us to review the district court's judgment confirming an arbitrator's order and denying Digital's request to vacate it.

1

¶ 3    Modern arbitration clauses are products of a strong policy that favors arbitration. For example, divisions of this court have concluded that "arising under," as it is used in an arbitration clause, is broad because (1) Colorado courts favor arbitration to resolve disputes; and (2) we should resolve any doubts that we have about a clause's scope in favor of arbitration.

¶ 4    But Digital points us to a debate among federal circuits concerning the scope of "arising under" in an effort to convince us to part company with these Colorado decisions. One side of the debate thinks that the scope of "arising under" is narrow, while the other side thinks that the phrase's scope is broad. After considering both sides of the debate, we are persuaded by the reasoning of the circuits that conclude that "arising under" is broad: these circuits are convinced that "arising under" is colored by a fundamental attribute of its environment — the arbitration clause — which reflects the strong federal policy that encourages arbitration.

¶ 5    We therefore conclude that all the claims that the arbitrator considered in this case were "dispute[s] arising under" the contract between Digital and Media, which were to "be resolved by binding

arbitration." The arbitrator therefore had jurisdiction to resolve those claims.

¶ 6    We also disagree, for reasons that we explain below, with two other contentions that Digital raises. As a result, we affirm the district court's judgment.

## I.  Background

¶ 7    Media entered into a contract to provide marketing services to Transcendent Marketing, LLC, which we shall call Transcendent. Transcendent was not a named party in this case.

¶ 8    Media then contracted with Digital to provide advertising services to Transcendent. Under the contract, Media agreed to pay Digital a portion of its earnings from Transcendent in exchange for Digital's work on the project.

¶ 9    But Media did not pay Digital. And someone from Digital told someone from Transcendent that Media had not paid. Apparently dissatisfied with Media's work and with its lack of payment to Digital, Transcendent proposed that Digital take over the project. Digital's principal officer agreed, but he had one of his other companies assume the work. This proposal effectively cut Media out of its agreement with Transcendent.

3

¶ 10    Digital sued Media for breach of contract, seeking unpaid earnings that Digital contended Media owed it for work it had done for Transcendent. Media filed counterclaims. The one that is the focus of the appeal alleged that Digital had breached the implied covenant of good faith and fair dealing by disclosing confidential information to Transcendent, Media's client; by soliciting Transcendent's business; by disparaging Media to Transcendent; and by stealing Transcendent as a client.

¶ 11    Because the contract between Media and Digital included an arbitration clause, the district court ordered them to arbitrate their dispute. The court stayed the case until the arbitration proceeding was finished.

¶ 12    During the arbitration proceeding, Digital argued that Media had breached the contract because Media had not paid Digital the amount that the contract required. The arbitrator agreed, and she awarded Digital $68,197.41.

¶ 13    When discussing the counterclaim alleging that Digital had breached the implied covenant of good faith and fair dealing, the arbitrator also referred to it as addressing a breach of Digital's duty of loyalty to Media. She then decided that, although the agreement

4

described Digital as an independent contractor, Digital still owed a duty of loyalty to Media, which Digital had breached. So the arbitrator awarded Media $24,400 in damages.

¶ 14 In her final order, the arbitrator concluded that neither Media nor Digital had prevailed. She therefore declined to award either of them attorney fees.

¶ 15 Digital filed a petition in the district court that asked the court to confirm the part of the arbitration order that awarded damages to Digital, vacate the part of the order that awarded damages to Media because the arbitrator had exceeded the scope of the arbitration clause, and award Digital its attorney fees. The district court disagreed with Digital's requests, so it confirmed the order in its entirety.

## II. Digital's Contentions

¶ 16 Digital raises three contentions.

¶ 17 First, Digital contends that the arbitrator did not have jurisdiction to consider whether Digital had breached a duty of loyalty to Media because the duty of loyalty claim did not "arise under" the arbitration clause.

¶ 18     Second, Media filed a counterclaim alleging that Digital had breached the implied covenant of good faith and fair dealing. Digital submits that the arbitrator improperly converted this counterclaim to a different claim — breach of loyalty — that Media had not raised. Digital continues that it did not have notice of the different elements of this claim. Digital wraps up this contention by asserting that the arbitrator's ruling on this different claim was unfair and that the arbitrator's award to Media was therefore void.

¶ 19     Third, even if we disagree with the first two contentions, Digital asserts that it was nonetheless entitled to attorney fees because (1) its contract with Media stated that the prevailing party in an arbitration proceeding concerning the terms of the contract would be entitled to attorney fees; (2) it prevailed on its breach of contract claim; (3) Media prevailed on a claim — the breach of loyalty claim — that was not part of the contract; so (4) Media did not prevail on a claim that was related to the contract.

III.  Standard of Review and General Arbitration Principles

¶ 20     We review de novo

- whether a dispute falls within the scope of an arbitration clause, *Taubman Cherry Creek Shopping Ctr., LLC v.*

6

*Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1093 (Colo. App. 2010);

- "a district court's legal conclusions on a motion to confirm or vacate an arbitration award," *Rocha v. Fin. Indem. Corp.*, 155 P.3d 602, 604 (Colo. App. 2006); and

- whether "the arbitrator's refusal to award attorney fees to plaintiff as the prevailing party was a determination beyond the scope of the parties' arbitration agreement," *Magenis v. Bruner*, 187 P.3d 1222, 1225 (Colo. App. 2008).

¶ 21    "To facilitate confidence in the finality of arbitration awards and discourage piecemeal litigation, [Colorado's arbitration statutes] strictly limit[] the role of the courts in reviewing awards, and a party challenging an award bears a heavy burden." *BFN-Greeley, LLC v. Adair Grp., Inc.*, 141 P.3d 937, 940 (Colo. App. 2006). "An arbitrator is the final judge of both fact and law," *id.*, and courts may not review the merits of an arbitration award if there are not statutory grounds to vacate, modify, or correct them, *Levy v. Am. Family Mut. Ins. Co.*, 293 P.3d 40, 49 (Colo. App. 2011).

7

¶ 22     Such statutory grounds are found in section 13-22-223(1)(d), C.R.S. 2018, which provides, as is pertinent to this case, that a court "shall vacate" an award "if the court finds that . . . [a]n arbitrator exceeded [her] powers." An arbitrator does not "exceed [her] powers by rendering a decision that is contrary to the rules of law that would have been applied by a court, so long as there is no violation of an express term of the agreement to arbitrate." *Byerly v. Kirkpatrick Pettis Smith Polian, Inc.*, 996 P.2d 771, 774 (Colo. App. 2000). In other words, "[i]t is not sufficient . . . to argue merely that the arbitrator committed an error of law on the merits." *Giraldi v. Morrell*, 892 P.2d 422, 424 (Colo. App. 1994). "Rather, [a] plaintiff must establish that the arbitrator exceeded the powers granted in the agreement by refusing to apply or ignoring the legal standard agreed upon by the parties for resolution of the dispute." *Id.* And an arbitrator has a great deal of flexibility in fashioning appropriate remedies. *BFN-Greeley, LLC*, 141 P.3d at 941.

IV.  Scope of "Arising Under"

A.  Introduction

¶ 23     Arbitration is a "favored method of dispute resolution" in Colorado. *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006). "Our

8

constitution, our statutes, and our case law all support agreements to arbitrate disputes." *Id.* But, like the federal courts, we do not force parties to arbitrate disputes when they have not clearly agreed to submit them to arbitration. *Id.* at 679.

¶ 24 An arbitration clause is a contract. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). We must therefore "interpret the [arbitration clause] in a manner that best effectuates the intent of the parties." *Id.* We determine their intent by reading the language of the clause, looking to "the plain and ordinary meaning of its terms." *Id.* We will enforce the clause as it is written unless it contains an ambiguity. *Id.*

¶ 25 "If ambiguities are found . . . we must afford the parties a presumption in favor of arbitration and resolve doubts about the scope of the arbitration clause in favor of arbitration." *Id.* "More specifically, we must compel arbitration unless we can say 'with positive assurance' that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute." *Id.* (quoting *City & Cty. of Denver v. Dist. Court*, 939 P.2d 1353, 1364 (Colo. 1997)). A "'broad or unrestricted' arbitration clause makes the strong presumption favoring arbitration apply

with even greater force." *Id.* (quoting *City & Cty. of Denver*, 939 P.2d at 1364).

¶ 26     Courts should "look beyond the legal cause of action and consider the factual allegations upon which the claims are premised." *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1270 (Colo. App. 2007) (citing *City & Cty. of Denver*, 939 P.2d at 1364).

> The factual allegations which form the basis of the claim asserted, rather than the legal cause of action pled, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the [alternative dispute resolution] clause. Tort claims and claims other than breach of contract claims are not necessarily excluded from [alternative dispute resolution].

*City & Cty. of Denver*, 939 P.2d at 1364.

¶ 27     Federal courts also have a "healthy regard for the . . . policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Federal cases interpreting or applying the Federal Arbitration Act help us to understand our Colorado arbitration statutes because the two statutory schemes "contain substantially similar language." *E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010).

¶ 28    The Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including when "the problem at hand is the construction of the contract language itself . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Federal courts will not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

¶ 29    Answering the question whether a party has agreed to arbitrate an issue requires interpretation of the arbitration clause. "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 582. Still, courts should "construe ambiguities concerning the scope of arbitrability in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66 (1995).

### B. Analysis

¶ 30    To remind the reader, the arbitration clause in the contract in this case states that "[a]ny disputes *arising under* this [a]greement

11

will be resolved by binding arbitration . . . ." (Emphasis added.)

Divisions of this court have considered this phrase before.

### 1. Colorado Cases

¶ 31    Discussing the general phrasing of arbitration clauses, a division of this court held that, "[w]hen an arbitration clause uses the phrase 'arising out of' or 'relating to,' it is broad in scope." *Smith*, 171 P.3d at 1270.  Relatedly, our supreme court noted that courts have interpreted the phrase "relating to" in arbitration clauses "as being broad rather than restrictive."  *City & Cty. of Denver*, 939 P.2d at 1366.

¶ 32    More apropos to the issue in this case, in *R.P.T. of Aspen, Inc. v. Innovative Communications, Inc.*, 917 P.2d 340, 341-42 (Colo. App. 1996), the division characterized an arbitration clause reading "[a]ny dispute which arises under this [a]greement" as employing "broad language."  And *BFN-Greeley, LLC*, 141 P.3d at 940, described the substantially similar phrase of "arising out of" as "broad[]."

¶ 33    And, in *Austin v. U S West, Inc.*, 926 P.2d 181, 183 (Colo. App. 1996), the division relied on the federal district court's analysis in *Lee v. Grandcor Medical Systems, Inc.*, 702 F. Supp. 252, 256 (D.

Colo. 1988), to conclude that an "arising under" arbitration clause was "sufficiently broad to include claims for fraud in the inducement." (In *Lee*, the district court decided that claims for fraudulent inducement and tortious interference with business relations "appear[ed]" to "arise under" the arbitration clause, adding that "doubtful" questions about the applicability of arbitration clauses should be resolved in favor of arbitration. *Id.* (quoting *Stateside Mach. Co. v. Alperin*, 591 F.2d 234, 240 (3d Cir. 1979)).) The division also recognized that "[o]ther courts have construed similar clauses equally as broadly." *Austin*, 926 P.2d at 183.

¶ 34 It turns out that the phrase "arising under" in arbitration clauses has prompted a debate among federal circuit courts about its scope. Considering this debate is helpful because "Colorado has followed federal precedent to determine the scope of an arbitration clause . . . ." *City & Cty. of Denver*, 939 P.2d at 1363-64. So the next step of our analysis is to explain the parameters of the federal debate.

## 2. Federal Cases

¶ 35 One side of the debate is represented primarily by cases from the Second, Ninth, and Federal Circuits. A prominent decision

interpreting this phrase is *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983). *Mediterranean Enterprises* compared the meanings of two similar, but clearly different, phrases.

¶ 36     The phrase "arising out of or relating to" a contract created a "broad arbitration clause." *Id.* at 1464 (quoting *Michele Amoruso E Figli v. Fisheries Dev. Corp.*, 499 F. Supp. 1074, 1080 (S.D.N.Y. 1980)). This is the standard language recommended by the American Arbitration Association. *Id.*

¶ 37     Prefiguring Digital's contention in this case, one of the parties in *Mediterranean Enterprises* argued that "arising under" was narrower than "arising out of or relating to." *Id.* at 1463. The party added that "arising under" meant that an arbitration proceeding would apply only to disputes "arising under the contract itself" and not to disputes that were "matters or claims independent of the contract or collateral" to it. *Id.*

¶ 38     The Ninth Circuit agreed, concluding that "'arising under' has been called 'relatively narrow as arbitration clauses go.'" *Id.* at 1464 (quoting *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 364 (S.D.N.Y. 1966)). It is "narrower in

14

scope" than "arising out of or relating to."  *Id.*; *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922-23 (9th Cir. 2011)(applying *Mediterranean*).

¶ 39    The court in *Evans v. Building Materials Corp. of America*, 858 F.3d 1377, 1381 (Fed. Cir. 2017), agreed with this interpretation of "arising under."  It observed that "'arising under' . . . is narrower in scope than language, such as 'relating to,' under which a claim may be arbitrable if it has a 'significant relationship' to the contract, regardless of whether it arises under the contract itself."  *Id.*

¶ 40    According to this side of the debate, the phrase "relating to" works to expand the scope of arbitration clauses.  *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), illustrates the expansive properties of "relating to."  The United States Supreme Court pointed out that the phrase "arising out of" — which has been treated similarly narrowly to the phrase "arising under" when it appears by itself, *see Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) — has been viewed broadly when combined with "relating to," *see Prima Paint Corp.*, 388 U.S. at 398.  Indeed, for this side of the debate,

adding the phrase "relating to" to "arising under" turns a narrow arbitration clause into a broad one.

¶ 41    We note that the Second Circuit was originally firmly on this side of the debate, issuing the first circuit court opinion to decide that "arising under" was a narrow phrase. *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961). (*Mediterranean Enterprises* relied heavily on *Kinoshita.  Mediterranean Enters.*, 708 F.2d at 1464.)

¶ 42    But the Second Circuit's position has changed quite a bit because the United States Supreme Court subsequently emphasized the strong federal policy that favors arbitration.  As a result, the Second Circuit recognized that *Kinoshita* was "inconsisten[t] with federal policy favoring arbitration."  *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984).  So the circuit court limited *Kinoshita* to its facts. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2d Cir. 2001).

¶ 43    The law in the Second Circuit today is that, "to ensure that an arbitration clause is narrowly interpreted[,] contracting parties must use ['arising under'] or its equivalent, although the better course, obviously, would be to specify exactly which claims are and

16

are not arbitrable." *S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194. The Second Circuit has not overruled *Kinoshita* because of its concern that "contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision." *Id.*

¶ 44 The other side of the debate is represented by decisions from the First, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh circuits.

¶ 45 The First Circuit agreed "with the majority of the federal circuits," and it concluded that "the analysis in *Kinoshita* is not consistent with the strong federal pro-arbitration policy set forth by" the federal arbitration statute. *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 381 (1st Cir. 2011)(addressing an arbitration clause using the phrase "arising under").

¶ 46 The Third Circuit observed that *Kinoshita* and its progeny have been "discredited both in the Second Circuit and in other jurisdictions." *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000). The court then concluded that the phrases "arising under" and "arising out of" "are normally given broad construction," when they appear in arbitration clauses. *Id.* at 727.

¶ 47     The Fifth Circuit decided that, "[b]ecause the arbitration clause in [this] case differs from that in *Kinoshita* and recognizing that *Kinoshita* is inconsistent with federal policy favoring arbitration," the district court had erred when it relied on *Kinoshita* to grant a request to stay arbitration.  *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 637 (5th Cir. 1985).

¶ 48     The Sixth Circuit said that the Second Circuit "has recognized that the authority of *Kinoshita* . . . is highly questionable even in" that circuit.  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003).  The court added that "[o]ther circuits have declined to follow *Kinoshita* because of the strong federal policy in favor of arbitration."  *Id.*  It then concluded that the phrase "arises out of" in an arbitration clause was "extremely broad."  *Id.* (quoting *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)).

¶ 49     The Seventh Circuit distinguished *Kinoshita,* concluding that the phrase "arising out of" "reache[d] all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se."  *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642

18

(7th Cir. 1993). In reaching this result, the court saw "no need to disagree with the Second and Ninth Circuits that 'arising under' may denote a dispute somehow limited to the interpretation and performance of the contract itself." *Id.*

¶ 50 The court then suggested a better approach than relying on what are arguably unclear distinctions among various phrases:

> [The] contracting parties control their own fate when it comes to deciding which disputes to consign to arbitration. On the one hand, they may delineate precisely those claims that are subject to arbitration or, on the other, they may employ general — even vague — language in their arbitration provisions. They may also combine these techniques by using general language to authorize arbitration together with specific language to identify the types of disputes that are *not* subject to arbitration, thereby limiting the reach of phrases such as "arising out of," "arising under" or "arising out of or relating to."

*Id.* at 643. Because the parties had not "taken any steps to narrow the reach" of the contract's arbitration clause, and, "in the light of the heavy presumption in favor of arbitration," the Seventh Circuit concluded that a claim in the complaint was arbitrable. *Id.*; *accord Cty. of Hawaii v. UNIDEV, LLC*, 301 P.3d 588, 606 (Haw. 2013)("Had the parties intended to restrict arbitration . . . it would have been a

simple matter to draft unambiguous language to effectuate that intent . . . . The failure of the parties to unambiguously limit the arbitrability of disputes suggests that they intended a longer reach for the arbitration clauses [using 'arising under'].").

¶ 51 The Eighth Circuit decided that the phrase "arising under" did not bar arbitration of certain claims because the arbitration law did not include any "limiting language" and it was "generally broad in scope." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010); *accord Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 996 (D. Minn. 1999)("[W]e believe than an interpretation of 'arising under,' or 'arising out of,' should be as broad as that applied to 'arising out of or relating to,' and we respectfully reject . . . *Kinoshita* . . . .").

¶ 52 The Eleventh Circuit rejected *Kinoshita* as "not being in accord with present day notions of arbitration as a viable alternative dispute resolution procedure." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 385 (11th Cir. 1996). The phrase "arising hereunder," which is a cheek-by-jowl relative of "arising under," was therefore broadly construed. *Id.* at 383.

¶ 53 The Tenth Circuit has not decided where it stands in this debate. At least one United States magistrate judge, however, believes that "the Tenth Circuit would follow the majority of the federal circuits and give the phrase 'arising under' a broad construction based on the strong federal policy in favor of arbitration." *Cook v. PenSa*, Civ. A. No. 13-cv-03282-RM-KMT, 2014 WL 3809409, at *14 (D. Colo. Aug. 1, 2014).

### 3. *Granite Rock*

¶ 54 Digital suggests that the United States Supreme Court signaled its position in this debate in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010). *Granite Rock* involved an arbitration clause that included the phrase "arising under." *Id.* at 304.

¶ 55 As is pertinent to our analysis, the issue in *Granite Rock* was "whether a collective-bargaining agreement . . . containing a no-strike provision was validly formed during the strike period." *Id.* at 292. "For purposes of determining arbitrability, *when* a contract is formed can be as critical as *whether* it was formed." *Id.* at 303-04. That distinction was key in *Granite Rock* because the date when the agreement "was formed . . . determines whether the

21

agreement's provisions were enforceable during the period relevant to the . . . dispute." *Id.* at 304; *see also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 n.1 (2006)(recognizing the difference between questions concerning "the contract's validity" and questions concerning "whether any agreement . . . was ever concluded").

¶ 56     Turning to the "arising under" language, the Supreme Court held that the collective-bargaining agreement's arbitration provision was not "fairly read to include a dispute about when the [agreement] came into existence." *Granite Rock,* 561 U.S. at 308. The Court also characterized "arising under" as having a "relatively narrow . . . scope." *Id.* at 307. But the basis of comparison was language in an arbitration clause found in *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International,* 370 U.S. 254 (1962). This clause read that the parties would "promptly attempt to adjust all complaints, disputes or grievances . . . involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties . . . directly or indirectly." *Id.* at 256-57.

¶ 57    We conclude, for the following reasons, that *Granite Rock* does not send the signal that Digital claims it sends.

¶ 58    First, *Granite Rock*'s statement that the phrase "arising under" was "relatively narrow," 561 U.S. at 307, was based on a comparison with the arbitration clause in *Drake Bakeries* that went well beyond the terms of the contract.  The clause in *Drake Bakeries* included "any act or conduct or relation between the parties . . . directly or indirectly."  370 U.S. at 257.  We must therefore consider the Supreme Court's observation about the relative narrowness of "arising under" in the context of what was a very broad arbitration clause in *Drake Bakeries.*  And the arbitration clause in this case is not as broad as the one in *Drake Bakeries* because it does not refer to Digital's or Media's acts, conduct, or relations.

¶ 59    Second, *Granite Rock* did not discuss the debate at the core of this case, even though the debate had been vigorously joined well before *Granite Rock* was decided.  It does not analyze, or even refer to, *Kinoshita*, *Mediterranean Enterprises*, *Tracer*, or to any of the cases that we have cited above from the other side of the debate.

And, critically, it does not conclude that "arising under" is narrow when compared to phrases such as "relating to."

¶ 60     Third, *Granite Rock* is distinguishable because the issue in that case concerned whether the arbitration clause was enforceable at a particular time.  Digital did not raise that issue in this case. *See Dialysis Access Ctr., LLC*, 638 F.3d at 382 (*Granite Rock*'s holding, "that a question concerning the very existence of the [collective-bargaining agreement] cannot fairly be said to 'arise under' the [collective-bargaining agreement,] does not counsel a result different from the one at which we here arrive.").

## 4.  Conclusion

¶ 61     We conclude, for the following reasons, that the phrase "arising under" was sufficiently broad to include the duty-of-loyalty counterclaim.

¶ 62     First, one side of the debate has a clear majority of adherents. Only three circuits hold that the phrase "arising under" is narrow, although one of them — the Second Circuit — has retreated significantly from that holding.  Seven circuits interpret the phrase broadly, and five of those circuits reject the foundation for the minority view — *Kinoshita* — as inconsistent with the federal policy

favoring arbitration. Sheer numbers are not necessarily determinative, of course, but the majority position is also of more recent vintage. We also think that it is more persuasive because it keeps faith with the Colorado and the federal policies favoring arbitration.

¶ 63 Second, the Second Circuit's obvious reluctance to embrace *Kinoshita* enthusiastically is telling. *Kinoshita* was the birth of the minority view. But the court that birthed it has had second thoughts about its offspring. The Second Circuit has now

- decided that *Kinoshita* was "inconsisten[t] with federal policy favoring arbitration," *S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194;

- limited *Kinoshita* to its facts, *Louis Dreyfus Negoce S.A.*, 252 F.3d at 225;

- counseled contracting parties that, instead of relying on the phrase "[arising under] or its equivalent, . . . the better course, obviously, would be to specify exactly which claims are and are not arbitrable," *S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194; *accord Sweet*

*Dreams Unlimited, Inc.*, 1 F.3d at 643; *Cty. of Hawaii*, 301 P.3d at 606; and

- has not overruled *Kinoshita* only because of an apparent concern that "contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision," *S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194. (We note that the Ninth Circuit expressed a similar concern. *See Cape Flattery Ltd.*, 647 F.3d at 923.)

¶ 64    Third, Colorado is not in the Second or the Ninth Circuit. As a result, we do not share the concern of those circuits that contracting parties in this state would have relied on the circuits' view of the phrase "arising under" when drafting arbitration clauses. *See Cape Flattery Ltd.*, 647 F.3d at 923; *S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194. Rather, we think that the clearly preferable course to relying on the phrase "arising under" would be to specify which claims are arbitrable and which claims are not. *See S.A. Mineracao Da Trindade-Samitri*, 745 F.2d at 194; *accord Sweet Dreams Unlimited, Inc.*, 1 F.3d at 643; *Cty. of Hawaii*, 301 P.3d at 606.

¶ 65    Fourth, Colorado law lines up with the majority federal view. Colorado applies a presumption in favor of arbitration unless a court is "positive[ly] assur[ed]" that an arbitration clause does not "encompass[] the subject matter of the dispute." *City & Cty. of Denver*, 939 P.2d at 1363-64 (quoting *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 840 (Colo. 1992)). We must resolve any doubts about the scope of an arbitration clause in favor of arbitration. *Id.* at 364. And a "'broad or unrestricted' arbitration clause makes the strong presumption favoring arbitration apply with even greater force." *Allen*, 71 P.3d at 378.

¶ 66    *Austin* is the only Colorado decision that we could find that comments on the debate. In that case, the division used a "*but see*" citation to refer to *Mediterranean Enterprises*, which indicated that *Mediterranean* conflicted with or contradicted the division's view that "arising under" was broad in scope. 926 P.3d at 183; *see* Black's Law Dictionary 1563 (10th ed. 2014)(defining "sed vide," or "but see" as "direct[ing] the reader's attention to an authority or a statement that conflicts with or contradicts the statement or principle just given").

¶ 67    We have not unearthed another Colorado case, and the parties did not cite any, that referred to any of the other principal cases in the debate, including *Kinoshita*, for the proposition that the phrase "arising under" in an arbitration clause is either narrow or broad. But we know that, without commenting on the debate, *R.P.T. of Aspen, Inc.*, stated that an arbitration clause including the phrase "arises under" contained "broad language," 917 P.2d at 342, and *BFN-Greeley, LLC*, described the substantially similar phrase of "arising out of" as broad, 141 P.3d at 940.

¶ 68    Although we are not bound by *Austin*, *R.P.T. of Aspen, Inc.*, and *BFN-Greeley, LLC*, *see People v. Thomas*, 195 P.3d 1162, 1164 (Colo. App. 2008)(one division of the court of appeals is not bound by the decision of another division), we are persuaded by them in light of the preceding analysis.  This means to us that the majority position is most consistent with Colorado's law.

¶ 69    We further conclude that the arbitration clause in this case was unrestricted: it was not accompanied by any qualifying language, and it did not include any language expressly excluding particular types of claims from its scope.  As a result, (1) we recognize that the "strong presumption favoring arbitration appl[ies]

28

with even greater force" in this case, *Allen*, 71 P.3d at 378; (2) we cannot be "positive[ly] assur[ed]" that the clause did not "encompass[] the subject matter of the dispute," *City & Cty. of Denver*, 939 P.2d at 1363-64 (quoting *Jefferson Cty. Sch. Dist. No. R-1*, 826 P.2d at 840); and (3) we must therefore resolve any doubts about whether the arbitrator's ruling on Media's counterclaim was within the scope of the arbitration clause in favor of arbitration, *id.*

¶ 70     Having now clarified the scope of the arbitration clause, we next consider the arbitrator's analysis of Media's counterclaim.

## V.  Duty of Loyalty

¶ 71     Relying on the conclusions that we have reached up to this point and the ones that we make below, we reject Digital's assertion that the arbitrator's ruling was void because she lacked jurisdiction to decide a claim that the parties had not presented to her.  *See State Farm Mut. Auto. Ins. Co. v. Stein*, 886 P.2d 326, 328 (Colo. App. 1994)("If an arbitrator makes an award which is outside the scope of the issues submitted, that portion of the award which goes beyond the matters submitted to it for resolution is void for lack of jurisdiction.").

¶ 72    As an initial matter, Media suggests that the arbitrator

actually ruled on the counterclaim that Digital had breached the

implied covenant of good faith and fair dealing.  It is clear from the

arbitration order that she did not intend to do so.  She wrote

instead that

> [t]he assertion that Digital . . . is liable to
> Media . . . for disparaging Media . . . to
> Transcendent and effectively stealing
> Transcendent as a client is not truly a claim
> for a breach of the implied covenant of good
> faith and fair dealing because it is not
> grounded in contract terms.

¶ 73    But even though we recognize that the arbitrator ruled on a

facially different counterclaim — breach of the duty of loyalty — we

nonetheless conclude, for the following reasons, that the different

claim was within the issues that Digital and Media had agreed to

submit and, indeed, submitted to the arbitrator.  *See id.*

¶ 74    We must "look beyond the legal cause of action" in this case —

 the breach-of-the-implied-warranty-of-good-faith-and-fair-dealing

counterclaim — and consider the facts on which it was based.

*Smith*, 171 P.3d at 1270 (citing *City & Cty. of Denver*, 939 P.2d at

1364).  The factual allegations that formed the basis of that

counterclaim, rather than the legal label that Media placed on it,

guides us in our analysis of the issue whether a substituted breach-of-the-duty-of-loyalty counterclaim fell within the scope of the arbitration clause. *Id.* And, based on that factual analysis, claims beyond breach of contract, such as tort claims, "are not necessarily excluded" from arbitration. *Id.*

¶ 75 The factual allegations in the breach-of-the-implied-duty-of-good-faith-and-fair-dealing counterclaim were that Digital had disparaged Media to Transcendent and that Digital had cooperated with Transcendent to pry Media loose from its contract with Transcendent. These allegations could, for the following reasons, form the basis for a breach-of-the-duty-of-loyalty claim if Digital was Media's agent.

¶ 76 "An agent is one who acts for or in the place of another by authority from him, or one who is entrusted with the business of another." *Governor's Ranch Prof'l Ctr., Ltd. v. Mercy of Colo., Inc.*, 793 P.2d 648, 651 (Colo. App. 1990). A claim of breach of the duty of loyalty may allege, among other things, that an agent breached "a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) of Agency § 387 (Am. Law Inst. 1958). "[A]n agent is subject to a duty

31

not to compete with the principal concerning the subject matter of his agency." *Id.* § 393. An agent may breach the duty of loyalty to a principal by acting "in competition with the principal" and by acquiring "interests adverse to" the principal. *Id.* § 387 cmt. a; *see also Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 494-98 (Colo. 1989)(observing that an employee's solicitation of coworkers to start a new business that would compete with the employer was a breach of the duty of loyalty to the employer).

¶ 77    "An agent who, without the acquiescence of his principal, acts for his own benefit . . . in a transaction is not entitled to compensation which otherwise would be due him because of the transaction." Restatement (Second) of Agency § 469 cmt. a (Am. Law Inst. 1958). And "[a] serious violation of a duty of loyalty . . . is a willful and deliberate *breach of the contract of service by the agent.*" *Id.* at cmt. b (emphasis added).

¶ 78    But Digital contends that it did not owe Media a duty of loyalty because it was an independent contractor, and independent contractors, since they are not agents, do not owe a duty of loyalty. An independent contractor "is one who engages to perform services for another, according to his own methods and manner, free from

32

the direction and control of the employer in all matters relating to the performance of the work, and accountable to him only for the result to be accomplished." *Cont'l Bus Sys., Inc. v. NLRB*, 325 F.2d 267, 271 (10th Cir. 1963).

¶ 79     An independent contractor "may or may not be an agent." Restatement (Second) of Agency § 2(3) (Am. Law Inst. 1958). An independent contractor is not an agent if "he is not a fiduciary, has no power to make the one employing him a party to a transaction, and is subject to no control over his conduct." *Id.* at cmt. b.

¶ 80     The arbitrator found that the evidence presented at the arbitration hearing "established that, although Digital . . . exercised substantial autonomy in the manner in which it performed its work under the [c]ontract, Media . . . controlled and had the right to control Digital . . . in its work and in its direct communications with Transcendent." The arbitrator decided that Digital "was acting as Media['s] . . . agent" "in its communications with Transcendent on the project." Digital therefore "owed a duty of loyalty to Media . . . in the manner in which it conducted those communications."

¶ 81   The question whether Digital was an agent, an independent

contractor, or both was one of fact, *see Varsity Tutors LLC v. Indus.*

*Claim Appeals Office*, 2017 COA 104, ¶ 16, which fell within the

arbitrator's authority as the fact finder in the arbitration hearing,

*see BFN-Greeley, LLC*, 141 P.3d at 940.  The record, however, does

not contain a transcript of the arbitration hearing, so we do not

know what evidence the arbitrator considered when she decided

that Digital was Media's agent.  In the absence of that transcript,

we must presume that the evidence presented at the hearing would

support the arbitrator's decision.  *See Hock v. N.Y. Life Ins. Co.*, 876

P.2d 1242, 1252 (Colo. 1994)("An appellate court must presume

that the trial court's findings and conclusions are supported by the

evidence when the appellant has failed to provide a complete

record."); *In re Marriage of McSoud*, 131 P.3d 1208, 1223 (Colo. App.

2006)("[A]n appellate court presumes that material portions omitted

from the record would support the judgment of the trial court.").

¶ 82   We do not know whether the arbitrator made a legal mistake

when applying the law of agency in this case.  But what if she did?

It would not affect the result that we reach.  *Giraldi*, 892 P.2d at

424 ("It is not sufficient . . . to argue merely that the arbitrator

committed an error of law on the merits."). Instead, our review, like the district court's, is limited to deciding whether Digital has "establish[ed] that the arbitrator exceeded the powers granted in the agreement by refusing to apply or ignoring the legal standard agreed upon by the parties for resolution of the dispute." *Id.*; *see also Container Tech. Corp. v. J. Gadsden Pty., Ltd.*, 781 P.2d 119, 121 (Colo. App. 1989)("[A]n arbitration award is not open to review on the merits," and "the merits of the award include the arbitrators' interpretation of the contract.").

¶ 83    (We note that, at one point, "manifest disregard of the law" was "a judicially created reason" for vacating arbitration awards under the Federal Arbitration Act. *Barnett v. Elite Prop. of Amer., Inc.*, 252 P.3d 14, 20 (Colo. App. 2010). But the "continuing viability" of that nonstatutory reason is now unclear under federal law. *Id.* at 21. And a division of this court held that manifest disregard of the law is *not* a ground for vacating an arbitration award under Colorado's arbitration statutes. *Coors Brewing Co. v. Cabo*, 114 P.3d 60, 63-66 (Colo. App. 2004).)

¶ 84    We therefore conclude that the arbitrator in this case did not exceed her powers because the substituted breach-of-the-duty-of-

35

loyalty counterclaim "arose under" the contract between Digital and Media. *See* Restatement (Second) of Agency § 469 cmt. b (Am. Law Inst. 1958)("A serious violation of a duty of loyalty . . . is a willful and deliberate breach of the contract of service by the agent . . . .").

¶ 85 Digital asserts that it did not have notice that the arbitrator was going to recast the breach-of-the-duty-of-good-faith-and-fair-dealing counterclaim as a breach-of-the-duty-of-loyalty counterclaim. Digital adds that the breach-of-the-duty-of-loyalty counterclaim was "never submitted or tried," so Digital "had no opportunity to offer evidence or provide legal argument for why it did not owe or breach any such duty . . . ." As a result, Digital finishes, it was prejudiced "in many ways." We disagree.

¶ 86 First, the language of the breach-of-the-duty-of-good-faith-and-fair-dealing counterclaim alleged that Digital had "disclos[ed] confidential information," "directly solicit[ed]" Media's client, and "disparage[d]" Media to its client. This language obviously incorporated concepts of disloyalty.

¶ 87 Second, Media's other counterclaims provided Digital with notice that Media intended to prove that Digital had been disloyal. A counterclaim based on breach of contract alleged that Digital had

disclosed confidential information in violation of a clause in the contract and solicited business from Transcendent in violation of a different contractual clause.  A counterclaim based on intentional interference with contractual relations alleged that Digital had induced Transcendent to breach its contract with Media or had made it virtually impossible for Transcendent to perform its obligations under the contract.  And a counterclaim based on misappropriation of trade secrets alleged that Digital had improperly taken Media's intellectual property.

¶ 88    Last, contrary to Digital's assertion, we do not know whether Digital expressly or impliedly consented to the arbitrator recasting the breach-of-the-duty-of-good-faith-and-fair-dealing counterclaim as a duty-of-loyalty counterclaim because we do not have a transcript of the arbitration hearing.  *See* C.R.C.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *CB Richard Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 528-29 (Colo. App. 2010)("Despite any defect in the pleadings, an issue is deemed properly before the court where it

has been tried before the court without timely objection or motion.").

¶ 89     We know from the arbitrator's award that the evidentiary part of the hearing lasted two days, two witnesses testified, the arbitrator admitted about fifty-five exhibits, and the parties gave their closing arguments over the telephone. But we do not know what anyone said during the hearing. As a result, we must, as we have previously concluded, presume that the transcript would support the arbitrator's award. *See Hock*, 876 P.2d at 1252; *In re Marriage of McSoud*, 131 P.3d at 1223.

### VI.  Attorney Fees

¶ 90     Digital submits that the arbitrator exceeded her authority when she concluded that, because neither party had prevailed, neither party was entitled to attorney fees. In support of this assertion, Digital points to the holding in *Magenis*, 187 P.3d at 1225.

¶ 91     The division in *Magenis* concluded that the language of the parties' arbitration clause did not give the arbitrator discretion to decide who was entitled to fees. The language in this case is similar: "In any action brought to enforce any provision of this

Agreement, the losing party shall pay the prevailing party's reasonable attorney fees . . . ."

¶ 92 The arbitrator in *Magenis*, though, resolved all disputes in one party's favor. *Id.* at 1223. So, in that case, there was a clear prevailing party. In this case, by contrast, there was no clear prevailing party since Digital prevailed on its breach-of-contract claim and Media prevailed on a counterclaim. The arbitration clause's mandatory language therefore did not apply in the same way.

¶ 93 Digital contends that the arbitration clause in this case required the arbitrator to award attorney fees to the prevailing party in an action to enforce a contract provision. We agree. But Digital also contends that it was the only party that prevailed in an action to enforce a provision of the contract. We disagree with that contention.

¶ 94 We have already "look[ed] beyond the legal cause of action" to consider the facts on which the counterclaim was based. *Smith*, 171 P.3d at 1270 (citing *City & Cty. of Denver*, 939 P.2d at 1364). Although, by doing so, we considered the concepts of a breach-of-the-duty-of-loyalty counterclaim, they were nonetheless rooted in

the facts that were pled in the breach-of-the-duty-of-good-faith-and-fair-dealing counterclaim, which, in turn, concerned a breach of contract claim. The arbitrator's award to Media on the breach-of-the-duty-of-loyalty counterclaim therefore meant that Media had prevailed in an action to enforce a provision of the contract. *See* Restatement (Second) of Agency § 469 cmt. b (Am. Law Inst. 1958)("A serious violation of a duty of loyalty . . . is a willful and deliberate breach of the contract of service by the agent . . . .").

¶ 95 So, because there was no clearly prevailing party, the arbitrator was not required to award Digital its attorney fees. Likewise, since the result of this appeal maintains the status quo and there is still no prevailing party, we decline Digital's request for appellate attorney fees.

¶ 96 Based on our preceding conclusions, our penultimate conclusion is that the arbitrator did not "exceed [her] powers." § 13-22-223(1)(d). Our ultimate conclusion is that the district court did not err when it confirmed the arbitrator's award because there were no statutory grounds to vacate, modify, or correct it. *See Levy*, 293 P.3d at 49.

¶ 97 The district court's judgment is therefore affirmed.

JUDGE TAUBMAN and JUDGE WELLING concur.